Good morning, your honors. My name is Michael Johnson. I represent the appellant Colorado Structures in this case. I thought we were going to have 20 minutes to argue, so I'll try and be brief and limit my remarks to 10 minutes. I would like to reserve a couple minutes for rebuttal comments. Boil down my introduction and just indicate that there are a couple issues in this case. Colorado Structures contends that it is an additional insured under policy issued by the appellee, North American Capacity Insurance. I'll refer to them as NAC. The question here is should the 2010 endorsement that was specifically prepared for Colorado Structures be applied, or should terms from a blanket endorsement that was included in the policy without regard to the Colorado Structures subcontract with NAC's name insured, should the terms of that blanket endorsement be engrafted into the 2010 endorsement? District Court found that the blanket endorsement included a time limitation that should be also applied to the 2010 endorsement. Now, your honors, can see from the 2010 endorsement that by its terms it includes no express time limitation whatsoever, other than the provision that it applies to losses arising from the liability ‑‑ I'm sorry, losses arising from the ongoing operations of the name insurance. So it would cover all of those ongoing operations. Counsel, are you contending this was a mistake? No, this was not a mistake. They forgot to put the beginning date in? No, this was not a mistake. As the Court is aware, under basic principles of insurance policy interpretation, the policy should be interpreted based on its provisions to ascertain the party's intent. If that intent can be ascertained from the express terms of the language, then there's no need to go beyond that. But if the insurance company knew that this accident had occurred prior to the date that the additional insured was added, just from basic underwriting concepts, how could they possibly have underwritten it for the amount that they did without looking at the terms of that accident? Wouldn't it have to be a mistake under your analysis? Not at all, your honor. Not at all. There's no evidence in the record on that, but there is evidence that a premium of $620,000 was paid for this policy by the named insured OCR. It's a lot of money. And that's an insured, a customer that NAC may have wanted to keep happy. So they may have issued this endorsement, and clearly there was nothing to prevent them from doing that under California law. Montrose case, Civil Code Section 2774 specifically allow an endorsement such as this to be issued, you know, after the accident happened, because the liability is still contingent. They don't know if Colorado Structures is going to get sued. They don't know what the liability might be. The liability is still contingent. But that's true of any insurance policy. You don't know going in what's going to happen. That's correct. In a third-party context in particular, it's different from a first-party context, certainly, and the California cases recognize that. If your house burns down, you can't go out and buy an insurance policy to pay for your house. However, it's perfectly acceptable if the carrier is willing to do it. If there's an accident, you buy a liability policy, and then the suit is filed later, and the terms of the policy are satisfied, they can cover that, that potential loss, both as defense fees and indemnity. Okay. So the first and third-party context, the distinction is very important here. This is a third-party case. They issued a policy. So your basic position is that this insurance became effective before it was requested. Well, the policy was in effect from July 1. But it didn't cover, didn't cover CSI when it was issued. No, they were not an additional insured at that time. They were added as an additional insured, and there's no limitation that the AI endorsement, the 2010 endorsement, only applies from the date it was prepared or the date it was sent to the insurer, anything like that. That language is just not there. Why don't you follow me through some language that is there. Okay. This certificate is issued as a matter of information only and confers no rights upon the certificate holder. This certificate does not amend, extend, or alter the coverage afforded by the policies below. That's the certificate, correct? Right. Certificates under California law do not afford coverage. They are information only. Right. And this one very clearly says, look, all we're saying is that there is coverage in existence, and it refers to certain policies, and said the mere existence of this certificate does not alter or amend those policies. That's correct. But not have they made it much clearer, could they? Right. But then if you read down at the bottom here, it says certificate holder. You see down here it says 10-day cancellation exception. Certificate holder is named as additional insured per attached endorsement. What was the attached endorsement? It was the 2010 endorsement, which doesn't include any limitations to time. Okay. So you've got a clear indication of what their intent was. The policy itself does include a limitation as to time. Policy? Yeah. Endorsement. Blanket endorsement. Endorsement 11. Endorsement 11 includes a limitation of time. But if you look at paragraph B, it's clearly that they're talking about a certificate. They're talking about an insured who's they're talking about an additional insured who's added by way of a certificate pursuant to paragraph A of the blanket endorsement. There's no reason that this carrier couldn't issue a specific 2010 endorsement to Colorado Structures affording different coverage than what was under the blanket endorsement. They're simply different coverages. And that's clear. One more thing on the certificate, which I think clearly establishes what the intent was here. Just after the part I was reading to you about Colorado Structures is named as an additional insured per attached endorsement, what does it say after that? It says duration. One year. Okay. One year. That was the policy term, July 1 to July 1. So clearly it was the intent that the duration of that additional insured endorsement, the 2010 endorsement, was going to be one year. Okay. Another commercial context issue. I talked about the premium and why they certainly were willing to do this based on the premium. They want to keep their insured happy. What happens based on the tactic that they're following here? NAC may escape, but who's not going to escape? Their named insured is going to get sued for breach of contract and breach of the indemnity provision under the subcontract. That's happened. That lawsuit is currently pending in the California State Court, Contra Costa County. So NAC, what it is doing is it has issued a 2010 endorsement in satisfaction of its named insured's contractual obligations to the additional insured. It's pulling the rug out from its named insured and leaving it liable for indemnity and breach of contract after issuing this endorsement. So from a commercial, in the context, that's another very important reason why they issued this endorsement the way they did. Couldn't the insured have avoided that eventuality by getting the endorsement prior to the time the work began? Yeah. They could have avoided that issue. But there's evidence in the record that the policy itself wasn't prepared and sent to the named insured OCR for several months after it was issued. It happens all the time. You don't look at when something was mailed. You don't look when something was prepared. You look at the language. I mean, in retrospect, your client shouldn't have allowed the subs on the job without the evidence of insurance. In retrospect, you could make that argument. But you don't know what the relationship is because there's no evidence on that. That's the risk they run. It's a potential risk they run. But if my client has hired – and I'm running out of time. I do want to save a couple minutes. If my client has a longstanding relationship with a customer in practice and history, well, then, yeah, they're going to, you know, they want to maintain that relationship. They're going to let them on there. They're going to get the endorsement they were promised. They got the endorsement they were promised with the coverage they were promised. They get sued. They tender it. And suddenly, the rug gets pulled out from under all of them by the carrier who is trying to engraft the provisions from a different endorsement, which was never sent to us, by the way. We were sent a certificate and a 2010 endorsement. The certificate says coverage per attached endorsement duration one year. We were never sent, you know, endorsement 11, coverage per endorsement 11, and here's how it's limited, which is inconsistent with the subcontract terms. Okay? You wanted to reserve time, you mentioned. I do. I've only got a minute here. But I would like to reserve whatever time I can. Good morning. Carl Yackel for NAC. There are three points I just want to briefly address. The first is the comments of counsel, which I believe are not supported in the record, regarding the fate of the named insured in the underlying case. One would assume that the insurance company is defending that case and is therefore not leaving its insured out to dry. In the commercial context, each general contractor or developer tries to protect itself in two ways. One is by an indemnity provision in the contract, as in this case. The second is by obtaining insurance for itself on the subcontractor's policies, as was attempted in this case. The second point is that for the court to find in appellant's favor, it would have to do what no California court has ever done outside of a completed operations coverage analysis, and that would be to find that coverage applies before it is requested or issued. The exception for that in completed operations coverage is completely sensible and I think discussed at some length by the trial court below. The nature of completed operations coverage is that it deals with completed operations, which under the statute of repose in California can be as many as 10 years in the past. Counsel, what's your response to opposing counsel's argument that there was a substantial premium paid and that there's nothing illegal about getting insurance after an incident has occurred? The amount of the premium, of course, paid by the named insured, not by the additional insured, on this record means nothing other than it costs a lot to get insurance in California, and that's, if I may address, commercial context has something to do with construction de facto litigation, which falls under completed operations analysis, which has led to in the context of the Montrose case and cases of continuing and progressive loss, a very difficult set of problems that have been addressed by the court about when coverage is triggered and when it's covered. None of those questions have ever applied in the context of someone falling down and getting hurt, the classic personal injury case. The date of occurrence is the day they fall down, that's when they get hurt. It's a simple analysis, and in this case, the accident occurred before CSI ever enjoyed any additional insured or any insured status under the policy. Why wouldn't a date have been put on the endorsement that was written? Why wouldn't there have been a date, an effective date on there? Because that is provided for in Endorsement 11, and you must remember that the certificate and the endorsement issued as one document, and under Endorsement 11, the date it's issued is the date that coverage incepts. And frankly, I think that was put there to deal with the issue of construction defect, progressive loss, completed operations. It is simple, but it applies equally here, and I think in addition, the California law we cited in the brief regarding the need for a contingency means that you don't have your accident first and get your insurance second, and that was the second part of your first question and why it would be wrong under California law to do that. And it would also be wrong under the policy as it is written, reading the policy as a whole, not just the endorsement out there by itself. What's your response to opposing counsel's argument that because the additional insured named certain additional insureds but not this one, that that limitation did not apply to CSI? I'm sorry, I don't understand. His argument was when you listed the additional insureds that were covered by the limitations on the certificates, that they are effective only when they're received, that applies to the named insured, named additional insureds who are listed in the policy, and CSI was not one of those, and so there is a different requirement. There are no named additional insureds in the policy. The way this policy is set up is you become under endorsement 11 an additional insured if a certificate is issued and approved by the company, and that is, I think, the proper reading of the insurance. Are there no additional insureds listed? No, the policy would list named insureds only. Okay. There are policies that issue sometimes with an endorsement at the time that says these people are also additional insureds or they may be made additional named insureds in cases where folks have, you know, ongoing relationships with companies or they have subsidiaries, that sort of thing. But that's not true in this case. No, in this case, what you have is a world where the construction contract is signed and the subcontractor is required to provide, usually before, and in this case, he's supposed to provide before he goes on the job, a proof of insurance and a proof of additional insured status for the developer. And in this contract, the developer also provided itself the option that if it allowed the folks on the job and they didn't have such a certificate, it could go out and procure insurance at that subcontractor's cost. So what was the opposing counsel talking about when he said there was a list of names that were? You were talking about, I believe, the certificate of insurance which names CSI and names this particular job at the bottom of the certificate. And if I'm wrong on that, he can correct me. Counsel, you have contended that endorsement 2010 and endorsement 11 were issued contemporaneously. Where in the record does that say that? That is in the deposition testimony of Ms. Johnson. That's where they're contending that for all evidence was considered. Is that correct? Yes. And that was Exhibit E to her deposition, which consists the first page of the certificate, the second of the endorsement. And her testimony regarding that is at, in the record, 153 and 154 of her condensed transcript. And that shows quite clearly that it was issued. And I think, again, I would simply point to the district court's analysis of the parole evidence issue. As I told the district court at the time, I think the date of the contract is not parole evidence. It's an essential term. I'm prepared to sum up at this point. Actually, there's only one other point I would wish to make on another issue, which is the contention by CSI that they can obtain an adjudication on behalf of their insurance carrier that the NIC policy is primary. That is governed by principles of equitable contribution and by the terms of the two policies. And, of course, the insurance company, that insurance company is not here, that policy is not here, and I would think it would be improper to so rule. As to the issue of the additional insured, summing up, it simply is, I think, the law of the State of California regarding contingency and known loss, the language of the policy, and, most importantly, the difference between completed operations and a standard occurrence compel an upholding of the district court's ruling. Thank you. Thank you. Mr. Johnson, you've got about a minute left. May I have a couple extra minutes, Your Honor? I'll try to confine it to the time, if you would. I'm sorry? If you could kind of confine it to the time, we'd appreciate it. I'll try. First of all, this case has nothing to do with completed operations. That issue tripped up the district court. The district court equated completed operations with claims made coverage. It's just a simple mistake. The parole evidence, Ms. Johnson's testimony, if you read Ms. Johnson's testimony, she testified it was her understanding that the endorsement was, the 2010 endorsement was in effect for the entire one-year policy period. So if you're going to look at her testimony, you ought to look at what her understanding is the name insured was with respect to that endorsement. And that's in excerpts of record 154 and page 158. She said at the point. She's intending that the additional insured was an additional insured during the entire term of the policy? Yeah. They were an additional insured for risk, for occurrences during the entire policy term. As we've discussed, there's nothing that prevents the carrier from issuing a 2010 endorsement specifically drafted with respect to the intent of the parties. That was your question about where are they named. They are named in this 2010 endorsement because it specifically was drafted for their purposes. Did I misunderstand your argument? I thought you said that they were not included, that CSI was not included in the additional insureds that were discussed in the main policy. Was that your argument? Well, sort of. The blanket endorsement is a blanket endorsement. It's drafted to be applicable in any situation. Okay? The 2010 endorsement was drafted specifically for my client with respect to the intent of the parties, meaning that it takes precedent over the blanket endorsement. It's a basic principle of insurance policy and contract interpretation. I understand your argument. Okay. So I guess I'll submit with that. Thank you very much, Your Honors. Thank you, gentlemen. The case is targeted and submitted.
judges: T.G. Nelson, Silverman, Rawlinson, Smith